IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| JANA HOLCOMBE, | : |
| | : |
| Plaintiff, | : |
| v. | : |
| | :  No. 3:14-CV-14 (CAR) |
| CREDIT PROTECTION | : |
| ASSOCIATION, LP, | : |
| | : |
| Defendant. | : |
| _____ | : |

### ORDER ON MOTION TO STAY

Before the Court is Defendant Credit Protection Association, LP's Motion to Stay [Doc. 14] this case pursuant to the primary jurisdiction doctrine and the Court's inherent authority to control its own docket. Plaintiff Jana Holcombe has responded and opposes the Motion [Doc. 20]. Having considered the Motion, the response thereto, and the applicable law, the Court **DENIES** the Motion to Stay.

### BACKGROUND

Plaintiff filed this case on February 4, 2014, alleging that Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by placing phone calls to Plaintiff's cell phone to collect a debt for cable television services owed to a third

party.[1]

Defendant filed an Answer and now moves to stay this case pursuant to the primary jurisdiction doctrine.  In support of the Motion, Defendant argues the allegations in the Complaint relevant to the TCPA claim turn on two issues currently pending before the Federal Communications Commission ("FCC"), the administrative agency charged with executing and enforcing the TCPA.  In response, Plaintiff argues a stay is unwarranted because the FCC and courts in this Circuit have consistently ruled on the issues presented.

## STANDARD OF REVIEW

The doctrine of primary jurisdiction is a judicial principle designed to "promot[e] proper relationships between the courts and administrative agencies charged with particular regulatory duties."[2]  The doctrine

> applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.[3]

---

[1] Plaintiff amended her Complaint with the Court's leave on June 26, 2014, to correct a typographical error: the original Complaint mistakenly referred to Defendant as "Credit Protection Associates, LP" when Defendant's correct name is "Credit Protection Association, LP."  The Amended Complaint raises the same substantive claims as those contained in the original Complaint.
[2] *Mercury Motor Exp., Inc. v. Brinke*, 475 F.2d 1086, 1092 (5th Cir. 1973).
[3] *United States v. W. Pac. R. Co.*, 352 U.S. 59, 63-64 (1956).

Referral of an issue to the appropriate agency on primary jurisdiction grounds "is favored when (a) it will promote even-handed treatment and uniformity in a highly regulated area, or when sporadic action by federal courts would disrupt an agency's delicate regulatory scheme; or (b) the agency possesses expertise in a specialized area with which the courts are relatively unfamiliar."[4]

"No fixed formula exists for applying the doctrine of primary jurisdiction."[5] Rather, in determining whether to apply it in any given case, the Court should consider "whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application."[6] As a general principle, courts should be reluctant to invoke the doctrine because it often results in additional expense and delay.[7] Some courts have stated that the doctrine should only be invoked "if a claim requires resolution of an issue of first impression."[8]

## DISCUSSION

Here, Defendant moves to stay these proceedings because the allegations in the Complaint turn on two issues currently pending before the FCC: (1) whether the TCPA

---

[4] *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 811 (5th Cir. 2011) (citing *Mercury Motor Express, Inc.*, 475 F.2d at 1092).

[5] *W. Pac. R. Co.*, 352 U.S. at 64.

[6] *Id.*

[7] *Miss. Power & Light Co. v. United Gas Pipeline Co.*, 532 F.2d 412, 419 (5th Cir. 1976); *see also Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 938 (8th Cir. 2005) ("The [primary jurisdiction" doctrine is to be invoked sparingly, as it often results in added expense and delay.") (internal quotation marks and citation omitted).

[8] *See, e.g.*, *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 98 (N.D. Ill. 2013); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1349 (S.D. Fla. 2013).

was intended to apply to non-telemarketing calls such as the debt collection calls at issue here; and (2) whether dialing equipment must have a "present ability" to generate and dial random or sequential numbers in order to constitute an Automatic Telephone Dialing System ("ATDS") within the meaning of the TCPA.  Defendant argues that the FCC is the proper governing body to rule on these issues, and, therefore, the Court should stay this action until the FCC issues its rulings.  The Court, however, finds that neither issue warrants a stay in this case.

**I.      Whether the TCPA Applies to Debt Collection Calls**

The first issue regarding the applicability of the TCPA to debt collection calls has already been determined by both the Eleventh Circuit and the FCC.  In *Osorio v. State Farm Bank, F.S.B.*,[9] the Eleventh Circuit reversed summary judgment in favor of the defendant on a TCPA claim in a case involving autodialed debt collection calls made to the plaintiff's cell phone.[10]  In *Osorio*, the Eleventh Circuit undertook the task of interpreting the language of the TCPA, specifically 47 U.S.C. § 227(b)(1)(A)(iii), which prohibits a person from "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any

---

[9] 746 F.3d 1242 (11th Cir. 2014).
[10] *Id.* at 1246.

telephone number assigned to a . . . cellular telephone service."[11]  While the *Osorio* court focused primarily on what constitutes "prior consent of the called party," the court unequivocally stated that "debt-collection calls are not exempt from 47 U.S.C. § 227(b)(1)(A)(iii)."[12]  Similarly, other district courts in this Circuit have consistently applied the TCPA to debt collection calls.[13]

Additionally, the FCC's prior rulings support the application of the TCPA to debt collection calls.  In its 2007 Declaratory Ruling, for example, the FCC states, in pertinent part,

> [T]he plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[39] We note that this prohibition applies <u>regardless of the content of the call</u>, and is not limited only to calls that constitute "telephone solicitations."[14]

The FCC later affirmed this holding in its 2012 Declaratory Ruling.[15]  Based on the foregoing authority, the Court is comfortable applying the TCPA to debt collection calls,

---

[11] *Id.* at 1250 (quoting 47 U.S.C. § 227(b)(1)(A)(iii))(emphasis added).
[12] *Id.* at 1254.
[13] *See, e.g., Lardner v. Diversified Consultants Inc.*, -- F. Supp. 2d --, 1:13-CV-22751-UU, 2014 WL 1778960, at *3-7 (S.D. Fla. May 1, 2014) (granting summary judgment in plaintiff's favor on TCPA claim against defendant debt collector); *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1322 (S.D. Fla. 2012) (granting partial summary judgment in plaintiff's favor on TCPA claim against debt collector), *aff'd*, 12-14564, 2014 WL 2523091 (11th Cir. June 5, 2014); *Stewart v. Regent Asset Mgmt. Solutions*, 1:10-CV-2552-CC-JFK, 2011 WL 1766018, at *5 (N.D. Ga. May 4, 2011) (recommending that the plaintiff's motion for default judgment be granted against defendant debt collector on TCPA claim).
[14] *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 565 (2008) (footnotes omitted) (emphasis added).
[15] *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1831-32 (2012) ("None of our actions change requirements for prerecorded messages that are non-telemarketing, informational calls, such as calls by or on behalf of tax-exempt non-profit organizations, calls for political

and, therefore, further administrative guidance on the first issue does not warrant a stay in this case.

## II. Whether Dialing Equipment must have a "Present Ability" to Generate and Dial Random or Sequential Numbers to Constitute an ATDS

The second issue regarding whether dialing equipment must have a present ability to generate and dial random or sequential numbers in order to qualify as an ATDS similarly does not mandate staying this case. Both the TCPA and the FCC have provided guidance on what constitutes an ATDS. The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[16] In 2003, the FCC held that a predictive dialer[17] falls within the statutory definition of an ATDS.[18] The basic characteristic of an ATDS is "the <u>capacity</u> to dial numbers without human intervention."[19] In 2008, the FCC reaffirmed that predictive dialers constitute ATDSs within the meaning of the TCPA.[20]

---

purposes, and calls for other noncommercial purposes, including those that deliver purely informational messages such as school closings. Such calls continue to require some form of prior express consent under the TCPA and the Commission's rules, if placed to wireless numbers and other specified recipients.6 Because the TCPA's restrictions do not apply to calls initiated for emergency purposes, our changes also do not affect messages sent to consumers to alert them to emergency situations.").

[16] 47 U.S.C. § 227(a)(1).
[17] The FCC defines a "predictive dialer" as "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14091 (2003).
[18] *Id.* at 14093.
[19] *Id.* at 14092 (emphasis in original).
[20] *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 566 (2008).

Here, Defendant admits in its Answer that it uses a predictive dialer but alleges that the equipment lacks the "present capacity" to store or produce random or sequential numbers. Defendant argues none of the prior FCC rulings have addressed the precise issue of whether the term "capacity" as used in the TCPA requires a "present ability" to generate random or sequential numbers. While the Court acknowledges that the FCC has not addressed the specific issue of what constitutes "capacity," the 2003 and 2007 FCC rulings and general rules of statutory interpretation ably guide the Court in deciding this issue. In fact, at least one district court in this Circuit has undertaken the task of determining what the term "capacity" means within the TCPA.[21]

In any event, because discovery is ongoing, the intricacies of Defendant's dialing equipment are not yet known to the respective parties or the Court. As such, whether Defendant's dialing equipment has the capacity to generate random or sequential numbers and whether the parties even dispute the meaning of the term "capacity" are issues better left for the summary judgment stage.

Moreover, Plaintiff alleges that Defendant violated the TCPA in two distinct ways, by placing a call using (1) an ATDS or (2) using an artificial or pre-recorded voice. "From the plain text of the statute, each of these violations is independently actionable; a plaintiff may recover damages for calls made 'using any automatic telephone dialing

---

[21] *See Hunt v. 21st Mortg. Corp.*, 2:12-CV-2697-WMA, 2013 WL 5230061, at *4 (N.D. Ala. Sept. 17, 2013).

system or an artificial or prerecorded voice.'"[22]  The petitions currently pending before the FCC have no bearing on the viability of the second claim.[23]  Therefore, the Court declines to stay these proceedings based on the second issue presented.

Based on the forgoing, it is clear the two issues presented are not matters of first impression for this Circuit or the FCC, nor are they so technical that this Court would be unable to decide the factual issues based on its own experience and guidance from prior FCC rulings.  Moreover, given the uncertainty as to when the FCC will issue rulings and whether the FCC will change its prior positions on these issues, the Court finds that a stay will add unnecessary delay and expense to the parties in the present litigation.  Accordingly, the Court declines to invoke the doctrine of primary jurisdiction to stay this case, and Defendant's Motion [Doc. 14] is **DENIED**.

**SO ORDERED,** this 28th day of August, 2014.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

ADP/ssh

---

[22] *Ayers v. Verizon Commc'ns, Inc.*, 8:14-CV-626-T-30MAP, 2014 WL 2574543, at *1 (M.D. Fla. June 9, 2014) (quoting 47 U.S.C. § 227(b)(1)(A) (emphasis added)).
[23] *See id.*